Case 3:19-cv-00313   Document 68   Filed on 07/18/22 in TXSD   Page 1 of 13

United States District Court
Southern District of Texas
**ENTERED**
July 18, 2022
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

## GALVESTON DIVISION

No. 3:19-cv-313

FLEET OPERATORS, INC., *ET AL.*, *PLAINTIFFS*,

v.

NAUTILUS INSURANCE COMPANY, *ET AL.*, *DEFENDANTS*.

### MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, *UNITED STATES DISTRICT JUDGE*:

Before the court is Fieldwood Energy, LLC's motion for summary judgment. Dkt. 62. Having considered the arguments, the summary-judgment evidence, and the applicable law, the court grants the motion.

**I.  Background**

Raylin Boudreaux alleges he was injured when he fell from a crane's personnel basket while employed by Mistras Group, Inc., f/k/a The Nacher Corporation (henceforth "Nacher"), as an x-ray technician aboard the *M/V Piper*, an offshore utility vessel. The *Piper* was owned by ADS Marine, LLC, and operated by Fleet Operators, Inc. Dkts. 1-1 (*Boudreaux* Complaint); 7 at 5. Kilgore Marine Services, LLC, under a Brokerage Agreement with Fleet,

Dkt. 7-2, acted as Fleet's agent for obtaining charters or similar work contracts for Fleet's vessels, Dkt. 62 at 6. At the time Boudreaux was injured, the *Piper* had been chartered to Fieldwood through Kilgore. Dkts. 7 at 6; *see generally* 7-1 (Master Time Charter Agreement). Boudreaux sued and eventually settled with ADS, Fleet, Fieldwood, and Island Operating Company, the crane operator. Dkt. 57 at 4.

In this action, plaintiffs ADS, Fleet, and Zurich American Insurance Company—as Fleet's subrogee—seek indemnification from Certain Underwriters at Lloyd's of London ("the Underwriters") and Fieldwood, the Underwriters' insured. Dkts. 7 at 6–8; 57 at 5. The plaintiffs contend ADS and Fleet are owed defense and indemnity obligations under two contracts: (1) a liability insurance policy that Underwriters issued to Fieldwood under policy No. B0507A17EL01780 ("the Policy"), and (2) a master time charter ("MTC") between Fieldwood and Kilgore. Dkts. 7 at 6–8; 57 at 5–6. The Underwriters agree in the Policy to defend Fieldwood as their named

insured.[1] The MTC[2] obligates Fieldwood to name the "Owner Group" as additional insureds. Dkts. 7 at 8; 45-1 at 8.

Fieldwood now moves for summary judgment on the plaintiffs' indemnity claims. It argues that the Brokerage Agreement between Fleet and Kilgore obligates Fleet to defend Fieldwood from any and all claims for personal injury, regardless of the negligence or fault of Fieldwood, as long as those claims arose from the work or services to be performed under the Brokerage Agreement. Dkt. 62 at 8.

## II. Legal Standard

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the nonmovant. *Coleman v. Hous. Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). The movant bears the burden of presenting the basis for the motion and the elements of the causes of action on which the

---

[1] The Policy states that "additional insured" means any person or entity to whom Fieldwood is obligated by an "insured contract" to provide insurance afforded by the Policy with respect to bodily injury or property damage arising out of operations conducted by Fieldwood but only to the extent required by any indemnity given by Fieldwood in the insured contract to the additional insured. Dkt. 7 at 8.

[2] The Policy defines an "insured contract" as "[a]ny written contract or agreement entered into by [Fieldwood] where [Fieldwood] assumes the tort liability of another party to pay for 'Bodily Injury' or 'Property Damage' to which this Policy applies to a 'Third Party.'" Dkt. 7 at 8.

nonmovant will be unable to establish a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmovant to offer specific facts showing a genuine dispute for trial. *See* Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted).

The court "may not make credibility determinations or weigh the evidence" in ruling on a summary-judgment motion. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). But when the nonmoving party has failed "to address or respond to a fact raised by the moving party and supported by evidence," then the fact is undisputed. *Broad. Music, Inc. v. Bentley*, No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). "Such undisputed facts may form the basis for summary judgment." *Id.* The court may grant summary judgment on any ground supported by the record, even if the ground is not raised by the movant. *United States v. Hous. Pipeline Co.*, 37 F.3d 224, 227 (5th Cir. 1994).

## III.  Analysis

In support of its argument that it owes the plaintiffs no contractual duty of defense and indemnity, Fieldwood contends that the Brokerage Agreement obligates Fleet: (1) to assume any obligations Kilgore assumed as part of any time charter, and (2) "to protect, defend, and indemnify and save harmless Broker Group for, from and against any and all claims, demands, causes of action and liabilities of every kind and character, whether to person or property . . . without limit and without regard to the cause or . . . negligence . . . of Broker Group." Dkt. 62-1 at 2–3.

The Brokerage Agreement defines the "Broker Group" as including Kilgore and "any Charterer or customer for whom work is to be performed." *Id.* at 1. The MTC between Kilgore and Fieldwood designates Kilgore as "Owner" and Fieldwood as "Charterer." Dkt. 62-2 at 1. Both agreements—the Brokerage Agreement and the MTC—are maritime contracts interpreted under general maritime law. Dkts. 44 (Notice of Agreed Choice of Law); 62 at 12. Accordingly, Fieldwood argues it is part of the Broker Group and therefore entitled to defense and indemnification from Fleet, including from

the third-party complaint Fleet and its subcontractor, ADS, filed against Fieldwood. Dkt. 62 at 10–11.[3]

The plaintiffs respond that the MTC—not the Brokerage Agreement—governs the parties' indemnity obligations, and to the extent the two conflict, the MTC has priority. Dkt. 65 at 1–2. Specifically, the plaintiffs argue: (1) the Brokerage Agreement does not clearly express Fieldwood's right to indemnity for contractual liabilities; (2) even if the Brokerage Agreement purports to give Fieldwood the relief it wants, it must yield to the MTC; and (3) the MTC obligates Fieldwood to defend and indemnify Fleet and ADS for Boudreaux's claims. *Id.* at 3–7. The court addresses each argument in turn.

### A.  Brokerage Agreement

The plaintiffs argue the Brokerage Agreement articulates Fieldwood's right to indemnity for personal-injury claims but not for contractual liabilities. Dkt. 65 at 3. The plaintiffs contend that their suit against Fieldwood for a defense against and indemnity for Boudreaux's claims

---

[3] The litigants agreed to a realignment of the parties to more simply reflect their relative claims and positions. Fleet, ADS, and Zurich American—now designated as the plaintiffs—contend they are owed defense and indemnity costs and have also asserted declaratory-judgment and breach-of-contract claims. The now-designated defendants—Nautilus, Nacher, Fieldwood, and Underwriters—maintain they owe no duties to defend and indemnify and also contest the breach-of-contract claims. Dkt. 39.

against them was just such a claim, while Fieldwood's arises under a contractual liability. Dkt. 65 at 3.

The plaintiffs rely on *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329 (5th Cir. Unit A 1981), for the proposition that for a maritime contract "to create a right of indemnity for independent contractual liabilities[,] . . . it must clearly express such a purpose." *Id.* at 334. Specifically, contract language that provides defense and indemnity for personal-injury or property damage does not include defense and indemnity for contractual claims. *Id.* In the absence of explicit language to the contrary, it is unreasonable to assume that the indemnitor intended to take on "such an unusual and surprising obligation." *Id.* at 333. The provision at issue in *Corbitt* provided for indemnity "against all claims, suits, liabilities and expenses on account of injury or death of persons . . . or damage of property arising out of or in connection with performance of this [Purchase] Order." *Id.* at 331.

Fieldwood counters that the provision in the Brokerage Agreement satisfies the *Corbitt* requirement for language that "clearly express[es] such a purpose." *Corbitt*, 654 F.2d at 334. Fieldwood adds that given the language used, it cannot be accused of seeking to impose liability that was not within

the parties' expressed intentions. *Id.* at 332. Article 5 of the Brokerage Agreement states as follows:

> [Fleet] agrees to protect, defend, and indemnify and save harmless Broker Group for, from and against **[1]** any and all claims, demands, causes of action and liabilities of every kind and character, whether to person or property (including, but not limited to personal injury, death, property damage or loss, economic damages, costs of litigation and attorneys' fees), without limit and without regard to the cause or causes thereof or the alleged, actual, passive, primary and/or secondary negligence, breach of warranty or contract, fault or unseaworthiness of Broker Group and/or any other person or entity, and **[2]** whether brought or presented by [Fleet] or by an employee, servant, and/or agent of [Fleet], and/or any contractor, sub-contractor, invitee, vendor or client of [Fleet] and/or their employees, servants or, agents, arising directly or indirectly out of, incident to, and/or connected with (i) **[3]** the work and/or services to be performed under this agreement, and/or (ii) [Fleet's] failure to honor any of the obligations set forth in Section 2(B) of this agreement.

Dkt. 62-1 at 3 (emphasis and bracketed numbering added).

The undisputed facts concerning Fleet's complaint against Fieldwood (in which Fleet asserted its claim for contractual defense and indemnity against Fieldwood for the personal-injury claims of Boudreaux) satisfy all three of the bracketed numbers above in Article 5. The complaint comprises [1] a claim or demand against Fieldwood for Fieldwood's alleged breach of the indemnity provisions of the MTC) [2] brought or presented by Fleet arising directly or indirectly out of, incident to and/or connected with [3] the work or services to be performed under the Brokerage Agreement. Moreover,

it is uncontested that Fieldwood was a member of the Broker Group, that the *Piper* was working for Fieldwood at the time of Boudreaux's accident, and that the *Piper* was working and performing services by virtue of the Brokerage Agreement.

This court is guided by the Fifth Circuit's instructions when interpreting contractual provisions:

> Federal courts sitting in admiralty adhere to the axiom that a contract should be interpreted so as to give meaning to all of its terms – presuming that every provision was intended to accomplish some purpose, and that none are deemed superfluous.

*Foster Wheeler Energy Corp. v. An Ning Jiang MV*, 383 F.3d 349, 354 (5th Cir. 2004). "[A]n interpretation that gives a reasonable and effective meaning to all terms of a contract is preferable to one that leaves a portion of the writing useless or inexplicable." *Id.* at 358 (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines,* 230 F.3d 549, 558 (2d Cir. 2000)). Applying this guidance to the Brokerage Agreement, the language of Article 5 clearly evinces an intention for Fleet's indemnity obligations to the Broker Group to include *both* contractual indemnity *and* tort-based claims such as personal injury and property damage. A contrary interpretation would leave important and clear language from Article 5—such as the breach of warranty or contract language—as "useless or inexplicable."

What remains to be seen, however, is whether the Brokerage Agreement retains its priority when combined with the indemnity language from the MTC.

### B. Controlling Contract

Fleet next argues that even if the Brokerage Agreement gives Fieldwood the relief it seeks, the Brokerage Agreement "must yield" to the MTC. Dkt. 65 at 6. In Fleet's eyes, because Fleet and Fieldwood contracted through Kilgore, the parties to the Brokerage Agreement—Fleet and Kilgore—anticipated the existence of a time charter and that the terms of any time charter executed by Kilgore as agent for Fleet would control. *Id.* In support, Fleet cites language from the Brokerage Agreement itself:

> It is understood that in consideration of procuring work for the Operator's vessel, Charterer may require that a Master Time Charter or similar charter be in place between Broker [Kilgore] and Charterer [Fieldwood], and that the charter of Operator's [Fleet's] vessel will be controlled by the Time Charter.

Dkt. 62-1 at 2.

The MTC provides that "[t]his Agreement shall govern the respective rights and duties of Owner and Charterer with respect to the charter of Owner's vessel(s) by Charterer." Dkt. 62-2 at 2. Additionally, the MTC contains the following merger clause:

> This Agreement and the applicable Short Form comprises the full and complete agreement of the Parties hereto with respect to the

> matters set forth herein and supersedes and cancels all prior communications, understandings and agreements between the Parties whether written or oral, expressed or implied.

Dkt. 62-2 at 16.

In response, Fieldwood argues that in paragraph 2(B) of the Brokerage Agreement, Fleet has expressly assumed whatever indemnity obligations Kilgore promised to Fieldwood in the MTC. Specifically, Fieldwood points to language in the agreement stating that Fleet has further agreed to defend and indemnify Kilgore from Fieldwood's indemnity demands, "without limit and . . . without regard to the . . . alleged breach of warranty or contract . . . of Broker Group." Dkt. 62-1 at 1–2. Fieldwood also argues that the merger clause, rather than bestowing any priority to the MTC over the Brokerage Agreement, merely confirms that all prior communications, understandings, and agreements between the "Parties" to the MTC are superseded and merged into the MTC, thereby rendering inadmissible any parole evidence. The MTC does not state that it has priority over "any other agreement," just prior agreements between the "Parties." Dkt. 66 at 10.

Fieldwood reasons that "Parties" is a defined term in the MTC to mean only Fieldwood and Kilgore. Dkt. 62-2 at 1. Fleet is neither a party nor referred to by name in the MTC. Rather, Fleet is a purported third-party beneficiary of Fieldwood's indemnity obligations to the "Owner Group."

Similarly, Fieldwood is not a party to the Brokerage Agreement, but does undisputedly qualify as a member of Broker Group, and thus is a third-party beneficiary of Fleet's indemnity obligations. Dkt. 66 at 11.

Additionally, and contrary to Fleet's assertions, the language of the Brokerage Agreement "does not expressly state that the defense and indemnity obligations in [the MTC] pre-empt or prime the obligations of [the Brokerage Agreement] or that [Broker Agreement]'s language regarding defense and indemnity applies only when [the MTC] does not." *Knox v. Bisso Marine, LLC*, No. CV 16-13350, 2017 WL 2098876 (E.D. La. May 15, 2017), at *3. Because the court finds that the Brokerage Agreement does not expressly yield priority and authority to the MTC, it does not reach Fleet's argument that the language of the MTC obligates only Fieldwood to defend and indemnify Fleet and ADS for Boudreaux's claims.

Consequently, the court holds that in accordance with Article 5 of the Brokerage Agreement, Fleet has agreed to defend and indemnify Fieldwood from Fieldwood's alleged breach-of-contract claims (alleged failure to indemnify Fleet and ADS under the MTC), and therefore Fleet's claims against Fieldwood have been released and waived as a matter of law. Fleet is obligated to defend and indemnify Fieldwood from the breach-of-contract claims asserted against Fieldwood by Fleet's subcontractors, like ADS.

\*   \*   \*

For all these reasons, the court grants Fieldwood's motion for summary judgment. Dkt. 62. The plaintiffs' claims against Fieldwood are dismissed.

Signed on Galveston Island this 18th day of July, 2022.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE